***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence and having reviewed the competent evidence of record, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. On November 29, 1995, the date of alleged injury by accident giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On said occasion, the employee-employer relationship existed between the plaintiff and the defendant-employer with the employer being insured by Florists' Mutual Insurance Company.
3. On said occasion, plaintiff's average weekly wage was $303.22, which yields a compensation rate of $202.25 per week.
4. All Industrial Commission forms are entered into evidence by stipulation of the parties.
5. The parties stipulated to a set of medical records listed as Stipulated Exhibit 1.
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. On November 29, 1995, plaintiff suffered an injury, which was initially believed to be to her left upper extremity, while pulling boxes at work. Plaintiff reported to her supervisor that she had "pulled a muscle" in her arm.
2. On December 1, 1995, plaintiff went to the Mission Hospital where she reported: "Hurt left shoulder pulling boxes. Pain in lower neck, left shoulder, numbness in fingers and hands. Hurts to move neck."
3. On December 8, 1995, plaintiff saw Dr. William M. Huffstutter, a neurologist, where she reported that approximately ten days ago she pulled a large box and experienced numbness in the left hand. Later that evening, plaintiff developed soreness in her neck and developed headaches. She described burning pain in her neck region and shoulder. Dr. Huffstutter initially believed that plaintiff had sustained a cervical injury and had radiculopathy. The plaintiff was given an MRI on December 18, 1995, which was read to be normal. Dr. Huffstutter had EMG/nerve condition studies performed to diagnose radiculopathy; those studies were also negative.
4. On January 17, 1996, plaintiff saw Dr. Gordon Groh, an orthopedic surgeon, and reported an injury to her left upper arm.
5. By April 5, 1996, Dr. Groh reported a 100% relief of plaintiff's shoulder complaints after injecting her with Lidocaine, Marcaine 
Celestone.
6. Plaintiff returned to Dr. Groh on June 5, 1996, with continued complaints in her left shoulder. Dr. Groh recommended that plaintiff have left shoulder subacromial decompression. This surgery was scheduled for August 27, 1996.
7. On August 26, 1996, plaintiff was involved in an automobile accident. The Deputy Commissioner apparently misunderstood the evidence and believed that the August 26, 1996, accident was the accident that plaintiff had with a dump truck, when in fact the dump truck accident occurred in May 2000. Plaintiff was involved in a minor automobile accident on August 26, 1996, for which there is no direct evidence that she received treatment for injuries arising from that accident.
8. Plaintiff declined the shoulder surgery recommended by Dr. Groh; however, on August 27, 1996, she had surgery to remove a ganglion cyst on her left wrist. There is no evidence in Dr. Groh's medical records that plaintiff incurred an injury from the automobile accident that she had the prior day. Plaintiff returned to Dr. Groh on August 30, 1996, and September 6, 1996, and again his records for these dates fail to reveal any significant injury from the August 26, 1996, automobile accident.
9. Plaintiff postponed proceeding with the shoulder surgery recommended by Dr. Groh in order to obtain a second opinion concerning the shoulder surgery from Dr. James Thompson, an orthopedic surgeon. Plaintiff saw Dr. Thompson on October 17, 1996. Dr. Thompson thought that plaintiff's upper extremity complaints were caused by a neck, rather than a shoulder, problem, and referred her to Dr. Loomis, a neurosurgeon. Dr. Thompson believed that plaintiff had cervical disc disease which was causing radiculopathy into her left upper extremity.
10. Dr. Loomis saw plaintiff on October 17, 1996. Dr. Loomis believed plaintiff had a herniated disc and recommended a myelogram. Dr. Loomis indicated that he chose to have a myelogram performed because it is more accurate than an MRI and plaintiff had a prior MRI which failed to reveal significant pathology. The myelogram revealed a herniated disc on the left at C6-7 impinging on the left nerve root. Dr. Loomis explained that this pathology explained the left sided shoulder and arm problems that plaintiff was experiencing.
11. On November 19, 1996, Dr. Loomis performed surgery on plaintiff's cervical spine. The procedure revealed an extruded free fragment of the disc on the left side of the C6-7 level measuring approximately 6 millimeters. The spinal surgery to remove the herniated disc relieved plaintiff's symptoms and she was able to return to work. Plaintiff's symptoms had resolved until she was in an unrelated automobile collision with a dump truck in May, 2000, where she received a new injury to her cervical spine.
12. Based on the greater weight of the credible evidence, the Full Commission finds that plaintiff sustained an injury to her cervical spine in the course of her employment on November 29, 1995. Dr. Huffstutter initially believed that plaintiff had a cervical injury with radiculopathy, although testing initially failed to confirm this diagnosis. Dr. Groh apparently misinterpreted plaintiff's upper extremity complaints as a shoulder condition rather than a cervical problem. Dr. Thompson provided no direct opinion on the central issue of whether plaintiff's cervical problems which resulted in surgery was caused by the November 1995 work injury or the August 1996 automobile accident, but he did explain that the cervical surgery corrected plaintiff's shoulder problems; therefore, the cause of plaintiff's symptoms was in her neck and not in her shoulder. Dr. Thompson's testimony and the results of the cervical surgery are convincing evidence that the injury sustained by plaintiff in November 1995 was to her neck and radiated to her left shoulder and arm. Dr. Loomis testified that the November 1995 work injury might or could have caused the herniated disc and explained that the myelogram was a more accurate test for determining the cause of plaintiff's cervical complaints than the MRI that was previously performed. Although the record contains evidence to suggest that plaintiff did not know whether her neck problem was caused by the events of November 1995 or August 1996, the Full Commission is persuaded by the fact that the neck surgery corrected her upper extremity complaints that continued from November 1995 through her surgery in November 1996, and finds that plaintiff sustained a neck injury in November 1995 which ultimately progressed to the point where she required cervical surgery in November 1996.
13. Plaintiff was totally disabled from work because of the compensable injury to her cervical spine from November 19, 1996, until she returned to work on March 1, 1997. Plaintiff was found by Dr. Loomis to have reached maximum medical improvement and has a 15% impairment rating to her back for her cervical injury and surgical correction.
14. Plaintiff was in a severe automobile accident with a dump truck in May 2000. Plaintiff has failed to establish that the medical treatment received subsequent to this accident is compensable or otherwise related to her compensable November 1995 injury.
 ***********
Based upon the foregoing Stipulations and Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury to her cervical spine, particularly including a herniated disc at C6-7, in the course and scope of her employment on November 29, 1995. N.C.G.S. § 97-2(6).
2. Plaintiff was totally disabled from work from November 19, 1996, until March 1, 1997. as a direct result of her compensable injury. N.C.G.S. § 97-29. Plaintiff is entitled to receive total temporary disability benefits at the rate of $202.25 per week during this period of disability.
3. Plaintiff has reached maximum medical improvement for her November 19, 1995, injury and has a 15% impairment rating to her spine for which she is entitled to receive 45 weeks of benefits at $202.25 per week. N.C.G.S. § 97-31(23).
4. Plaintiff is entitled to have defendants pay all medical expenses incurred by plaintiff as a result of her compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
5. Plaintiff sustained a new and intervening injury in May 2000 when she was involved in a unrelated automobile accident with a dump truck, and defendants are not responsible for medical treatment related to plaintiff's May 2000 injury.
 ***********
Based upon the foregoing Findings of facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to receive and defendants shall pay total temporary disability benefits at the rate of $202.25 per week for the period from November 19, 1996, until March 1, 1997. This sum has accrued and shall be paid in a lump sum, subject to the attorney's fees awarded below.
2. Plaintiff is entitled to receive and defendants shall pay 45 weeks of benefits at $202.25 per week for the 15% impairment rating to her spine.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury to the extent it tends to effect a cure, give relief or lesson plaintiff's period of disability. Defendants, however, are not required to pay for medical expenses incurred by plaintiff on or after May 2000 for injuries that she sustained in an unrelated automobile collision.
4. Plaintiff's attorney is entitled to receive 25% of the sums awarded in paragraphs 1 and 2 of this Award, and defendants shall withhold this sum from the funds payable to plaintiff and pay these funds directly to plaintiff's counsel.
5. All costs shall be paid by defendants, including the deposition fees of Dr. Thompson and Dr. Loomis, if not already paid by defendants.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER